15-5991, Shaw v. United States. Ms. Bell. Thank you, Mr. Chief Justice, and may it please the Court. Clause 1 of the Federal Bank Fraud Statute premises culpability on intent to fraud a financial institution, and this case concerns what that element entails. The settled meaning of Clause 1's text, based on a century of this Court's precedent its fraud precedent, makes clear that intent to defraud a bank requires intent both to deceive the bank and wrong the bank in its own property rights. Intent to wrong a bank's property rights, which includes its own possessory rights in bank-held property, means intent to cause the bank, not the company, to deceive the customer, to bear the property loss of a fraud scheme. And in this sense, I'm sorry, possessory right means I own something. I'm holding it in most criminal charges for larceny. The issue is whether I have a possessory right, regardless of what I want to do with this property, over you, who's taking it from me. So where do you get the next step that possessory right means that I have to lose something of value, or that I'm going to ultimately bear the loss? Isn't the loss merely the loss of the possessory right? Your Honor, the statute turns on intent, and were the government to prove the defendant's intent to deprive you of your possessory right, then that would be sufficient. And where that comes from is from this Court-settled fraud precedent. Going back a hundred years, the Court has interpreted the term defraud to mean property loss to the victim. And we see this as a fraud. Breyer. So if you're insured, then if you're insured, and the or at least the defendant believes he's insured, isn't that? If the defendant believes that the bank is insured, and therefore that another party will bear the loss? Kim Kardashian's thief, if there is one, believes that all that jewelry is insured, indeed over-insured. So it's not theft? Well, so it would depend on the language of the statute. If it says defraud, she lied, he says, I'm knocking on the door, you know, I'll go as far as you want. I don't see that that has anything to do with it. You mean if he defrauds him out of the money? He defrauds her out of the jewelry. He says, here I am, your local jewelry cleaner, gets the jewelry. Wouldn't you think that was fraud? Even if she's insured. Even if he thinks she's triple insured. Even if he thinks that, in fact, this isn't even her jewelry, but it was just loaned her on the occasion by a good friend, the necklace. It would depend on whether the statute in that case required the intent to defraud a specific person. The statute says is defraud. Defraud. In that case, it's much like the mail-and-wire fraud statutes, which do not specify a required victim for the fraud scheme, and therefore provided the government could prove the two undisputed components of the term defraud, which come from the loan. Breyer, I'm not asking you to repeat it. I'm asking you if the local person comes to the door and says, dear Ms. Kardashian, I am your local jewelry cleaner. Please give me your jewelry. She does. How? Right. And that's not fraud. He wanted to get the jewelry. He tried to get the jewelry. He also believed that the friend had just loaned it for the evening, that she's triple insured, that she won't even lose any money because the publicity will be worth it. Okay? Now, my question is, there's the statute. I would have always thought from my first year in law school criminal law that that was fraud. But perhaps I was wrong, so I would like you to explain it. Yes, Your Honor. That would be a scheme to defraud the insurer. If the scheme, in this case of the mail-and-wire fraud statutes, which penalize a scheme to defraud anyone, for example, and provide heightened penalties for schemes that defraud anyone and happen to affect the bank, then, yes, that would satisfy the statute. But if the statute specified a particular victim, as Clause 1 does here, and Clause 1 says, the intended victim must be the bank, not the customer. And so our argument depends on that, on two steps based on this Court's longstanding fraud precedent. The first is how we define defraud. But the second is the presence of the direct object there. In the example that Your Honor posited, there was no required object of the fraud scheme, and therefore, at the very least, it would certainly constitute a scheme to obtain money or property by means of false pretenses. Within what scope of those? Roberts, you get mired in some very abstract concepts of property rights. Yes, someone is insured, but, you know, if they keep getting their property stolen, their insurance rates go up. Here, okay, it wasn't the – if you correct, it wasn't the bank's own property, but it's somebody else's property that they use in making loans. And, again, they will have less money to make loans if the property is – is being – is being taken. Now, does your case turn on what the defendant knows, even if that's not right? I mean, I – the argument may as well – people commonly think you put your money in the bank, it's your money, and they'll give it back. But, in fact, it's, of course, loaned out by the bank. But if the defendant really thinks, I'm not – I don't want to take anything from the bank. I'm taking this from Tsu, and he's wrong. Is – is he off the hook? Yes, Your Honor. So, first of all, the standard here is not what he knows, but what he intends, which this Court, going back to the Durland case in 1896, has equated with purpose, which makes sense because we're talking about a scheme which is a plan with a purpose. And precisely for that reason, this particular liability scheme avoids the effect-based technicalities that the government complains of, because it doesn't matter whether the bank, in fact, has possessory interests or whether the insurer is going to, in fact, bear the loss. The only thing that matters is, as Your Honor says, what the defendant intends, what his purpose is in devising the scheme. Well, is that making – is that ignorance of the law being the defense? Because the law – he thinks the bank doesn't have any property interest at all. But, in fact, the bank has the property interest as a – either a bailee or a bailor, I forget which one it is. And the bank has the property interest because it actually uses the money in its own effect. But he's wrong about that legal question of property. So he – his ignorance of the law is a defense? Your Honor, it wouldn't be ignorance of the law. There's nothing anomalous about an intent-based liability scheme. And the answer is that particular fraud scheme would be punished under Clause 2 of the statute. It's not that it's not bank fraud. Ginsburg. In this – you mentioned the sub 2. Do you recognize, do you concede that Shaw could have been charged and convicted under the obtaining property owned by or under the custody or control of a financial institution? If the – if the government had charged that instead of defrauding a financial institution, could Shaw have been found guilty? Absolutely, Your Honor. That was the appropriate charge in this case. And the reason why the bank fraud statute works as a whole, exactly as Congress intended, based on this intent-based liability scheme, is because the schemes that arise in the Federal circuits sort neatly into Clause 1, Clause 2, or both, depending on the design of the scheme. So the design is in most every practical case, in every real-world example, going to reflect the intent. And the design here, the intent here, is to harm whoever has a lawful possessory interest. Your Honor, the intent required under Clause 1, and that's quite clear because it specifies the bank, is to harm the bank in its property. But it has a possessory interest. And certainly, if the – And that possessory interest is harmed. It's the harm to the interest, not the harm to the entity. In fact, it may be harmed, although in this case, of course, this is an example where the banks never suffered any loss, and there was no dispute on that point. But certainly, Your Honor, it's true that the – But it was – was it not a harm to the possessory interest? Yes, Your Honor. Insofar as the bank was deprived for a momentary period of those funds in its coffers, yes, in fact, it was deprived. But – So, Ms. Bell, I guess I'm – Yes. I guess what Justice Kennedy is suggesting, and maybe I'm confused about the same thing, it now seems to me that there's no difference between your view and the government's view. So, Mr. Yang, I'm putting you on notice that this is a question to you, too, because both of you are saying, look, there needs to be an intent to deceive the bank. Correct. And there needs to be an intent to deprive the bank of some form of property interest, but with the recognition that property interests include possessory interests as well as more classic ownership interests. And you agree with that. Correct, Your Honor. And I'm going to think, and, Mr. Yang, you'll tell me, that Mr. Yang would agree with that, too. Well – So what are we fighting about? Correct, Your Honor. I mean, it's – then it's just Mr. Yang would say, well, look, a bank has a possessory interest in assets that are part of its depositor's account. And so, you know, the – that's – whether you target the depositor's account or whether you target something else, you're still manifesting the same intent to deprive the bank of a property including possessory interest. Right. I understand, Your Honor. I think there are two issues here. The first one is whether an intent to deceive is sufficient for an intent to defraud. And the Ninth Circuit approved of jury instructions that permitted a conviction on that basis. That alone – So that seems right to me. I just want to point, you know, that you might say that all of that is right and that the government and you agree, and what you really disagree on is whether these instructions reflected that correct understanding of the law. And that seems fair to me. And we should talk about the instructions. Yes. But it seems to me that the understanding of the law is now you are in perfect harmony. It may be the case, but let me explain. I think that on the second prong in terms of if intent to deceive requires more than – I'm sorry. If intent to defraud requires more than just intent to deceive, what is that second piece? And there we get to what it means to wrong a bank in its property rights. I understand – It says in the instructions, is intent to deceive, cheat, or deprive a financial institution of something of value. Correct, Your Honor. And that would permit – So what's the problem? That would – because it's worded in the disjunctive, in other words, or, it permits a conviction on the basis of – So the or goes between to deceive, cheat, or deprive. Correct. And so it would allow – But what you have to cheat, deceive, or deprive them of is something of value. Correct, Your Honor. And a possessory interest is something of value. So what are you arguing about? Your Honor, two things. First of all, the – I would disagree respectfully with the Court's interpretation of the scheme to defraud instruction. I do not think that the deprive the bank of something of value is plausibly read to modify, deceive, and cheat. In other words, you think it means deceive, cheat, or deprive. Correct, Your Honor. But not of anything. It doesn't say anything. It would be deceive, deceive, or deprive them of. And then it comes out of the blue and says someone intends a financial institution of value. That's what you think it means. You better think – Okay. Did you make that argument in the court below? Yes, Your Honor. That was precisely the argument. It's always been – Do you have it here by chance? What page you made that particular argument? Sure, Your Honor. I can get that on rebuttal. I don't want to take the Court's time now. But let me be clear. We're here because the scheme to defraud requires the intent to defraud. And that's really undisputed that that's the element. The intent to defraud instruction simply required the intent to deceive or cheat. My colleague, Justice Alito, has written extensively on this issue of intent versus knowledge. Yes, Your Honor. All right. Why don't we just – instead of using intent – Yes. All right. You can deceive someone without taking property, right? Certainly, yes. All right. Someone can open up an account in a false name. They've deceived the bank. But it's not to cheat the bank of anything it's holding. But it's to cheat the wife, who he wants to hide money from, right? Okay. Yes. So nothing of value has been taken. You can cheat the bank in that way, too, out of moving something somewhere, but not to take it, okay? Yes. And you can deprive someone of property without deceiving or cheating them. You can rob them, right? Correct. All right. So I thought – and this is what Justice Kagan was getting to – it has to be that you deceive or cheat and deprive someone of property, correct? Your Honor, the cheat, I think, is synonymous with the concept of – Of defrauding. Of actual – well, defrauding, Your Honor's correct. You defraud someone by deception. Deception in order to cause them to bear the property loss. That's why you say it's two different elements. They're two – no, I'm sorry. They're not two different elements. It's one element. It's the intent to defraud. But they're two components of defraud. And the government doesn't dispute that. That comes from the Hammerschmidt case in 1924. Sotomayor, so far I perfectly understand your point. Thank you. Yes. That the fraud element has two prongs to it, deception for the lack – you know, deception, one prong, and deprivation of the other. You're taking the money by – or the possessory interest by deception. And you're saying that by using the disjunctive, the or, the jury could have convicted merely for deceiving the bank, but didn't find that they deceived and deprived the bank of a possessory interest. That's exactly right, Your Honor. All right. That's exactly right. And I think that's the case. Now, Justice Breyer has asked the operative question. Yes. And it's what confused me throughout, both in the discussions below and here. At first, I thought this case was only about reading your brief about whether the deprivation had to be of something the bank owned. Yes. As opposed to had a possessory interest in. And Justice Kagan rightly says you seem to have backed off from that claim. You seem to be saying owned can mean merely a possessory interest. Is that correct now? Your Honor, we don't see that as a different formulation. And let me explain why, because I certainly understand the confusion. The standard is that comes from this Court's fraud precedent, the mail-and-wire fraud precedent that everybody agrees is the operative body of law, is the intent to wrong the bank in its property rights. That the Court — In its what? In its property rights. In its property rights. In its own property rights. Which you now acknowledge can include possessory interests. Correct. And we certainly never meant to disavow that. The issue is, what does that mean in practice? And in practice, what that means is the intent to cause the bank, and not the customer, to bear the property loss of the scheme. No. That's not what it means. That's not what it means. And maybe something more is required. Maybe it has to be deprive of an ownership interest or cause a loss. But depriving of a possessory interest is not the same as causing a loss to the bank. Well, let me explain how I mean it. I mean it in the sense that, as this Court has recognized, when you intend a deprivation of a victim, you also — the mirror image of that is the intended acquisition. And that's where we're getting the idea that when you intend, if a defendant were — and I have never seen a case in my personal practice or anywhere in the Federal circuits that approaches anything like an intent to actually deprive the bank of its possessory interests. What defendants think about when they posit these schemes to get customer deposits is to either — is either that they're taking the customer's money or they're taking the bank's money, insofar as the bank is going to suffer the loss or the customer is going to suffer the loss. But presumably, most of them don't care. You want us to write an opinion to say it's perfectly lawful under this statute, Section 1, to knowingly deprive someone of a possessory interest by deception? Well, Your Honor, I think that — You want us to write that? No, Your Honor. Insofar as, first of all, the standard would be the intent, right? So we're talking about the intent, which is different than knowledge. It's the purpose. The intent to deprive someone by deception of a possessory interest is proper. You need something more. That's what you — that's what you're saying. You — the intent to deceive the bank and deprive the bank of a possessory  That does not come up in practice, however. The proper — Your point is you have to have the intent to hurt the bank. Exactly. Exactly, Your Honor. Not the customer. That is exactly right. So if you — if the customer will end up bearing the loss, then you say one doesn't apply. What does one cover, in your view, other than check hiding? Yes, Your Honor. It applies to — it applies to any scheme designed to cause the bank — that targets the bank as the financial victim of the fraud by means of concealment, omission, or any other kind of deceit. So this would be — By watching the movies, most of — I'd be afraid in this case that we're going to write something of five pages that nobody's going to understand, where the simple thing, Jesse James goes up to the bank, says, your money or your life. He sees behind the teller is a drawer, and he knows that in that drawer the last five customers have given him some money. That's the money he wants. It doesn't matter. Whether, in fact, the bank is going to put that money in Joe Smith's account or whether the bank has something called a possessory interest or something else. And, in fact, if Jesse James' brother comes up and says, Jesse James is on the way. Give me the money. It should be the same result. Now, that's very simple-minded, but — and it's drilled in me by the movies. But if, in fact, you have a different approach, I would like to know where in the law that different approach is, and why it is, and how this does — how this is — I'm afraid, in other words, of confusion. You un-confuse me, please. Yes, Your Honor. And when your — when Your Honor says if I have a different approach in terms of where our — where our construction of Clause 1 comes from in the Court's precedent, is that the question? Yeah. My question is, why hasn't Jesse James or his brother committed a crime? The brother, probably, because he's lied and says Jesse James is on the way. And whether the money behind the desk was put there, to everyone's knowledge, by the depositors, or whether the money happens to have been there for 50 years by the bank, put in by the bank's founder, makes no difference to this statute. And I want to know why it should or anything else you want to say about that. So that — that case where there's some ambiguity, and this gets back to Your Honor's question, Justice Ginsburg, that — that case would be best charged under Clause 2, which covers schemes that intend to victimize either the customer or the bank, provided the requisite means of a false statement. So whenever there's any ambiguity in terms of what, as a practical matter, does this cover, Clause 2 will cover the customer deposit scheme in Loughran — I'm sorry, the alter-check scheme in Loughran, and it will cover the deposit scheme here. It will cover Your Honor's hypothetical, provided the — the intent also to deceive. And it's not just plain, let's say, bank larceny, which is covered under another statute and — and focuses on the effect of — of the conduct. And Clause 1, then, is reserved for other cases like check-kiting, which was a major, major impetus for this — this statute's enactment. And Congress knew at the time, based on this 182 decision in Williams, that it — that check-kiting was not going to be covered under Clause 2. It's one of the most pervasive forms of bank fraud. So that's not a minor role that Clause 1 serves. But in addition, it's going to serve the loan fraud and the bank embezzlement types of cases where there's no affirmative false statement. The — Sotomayor, if we disagree with you, if we were to say that this subsection 1 means that you are targeting property that — depriving a bank of property in which it has a possessory interest. Yes. And we say you don't have to prove the bank is going to lose anything of value, that it's going to be reimbursed by insurance, or that ultimately the customer is going to receive — bear the loss. So long as you have defrauded the bank, some deception to the bank, and deprived it of some possessory interest, whether it bears the loss or not, if that's how we rule, do you lose this case? No, Your Honor, because it comes down to the requisite intent and purpose. And we're disagreeing with you. That's how we're going to say what it means. Yes. I understand. And I think — All right. Do you lose this case? Ms. Bell, I think your answer is no, Your Honor, because the instructions don't reflect your understanding of the law. We certainly win on that basis. So reversal is required because the intent to defraud means more than the — more than just the case. I'm not saying it does. I think it's a hard question as to whether the instructions do or don't. Right. But it does seem to me you have an argument about the instructions. That's — that's correct. And I think we also, though, would not lose under that second question about even if the Court construes, which we agree with, that the intent must be to harm the bank and its property rights. It's the economic injury. And that is reflected in every single fraud decision we see from this Court, starting with Dirk. Ginsburg. If the Court disagrees with you about that, if the Court thinks that sub one doesn't require that you intend to cause the bank financial harm, only that you intend to deprive the bank of something of value, if that's by deception. Yes. Sotomayor, should the Ninth Circuit be affirmed? No. If we reject your theory that you have to intend to cause the bank a financial loss? No, Your Honor. And let me be clear, because I understand that it is confusing with the different theories. But our — those two formulations that Your Honor articulated are one and the same in our view. In other words, the intent to wrong a bank in its property rights is the second component of defraud. But what does that mean in practice? That's not nonsensical for a jury. What that means is that the bank must bear the loss of the scheme. And so we have a lot of cases, and I think the Model Penal Code started it, where you have the word intent in a statute. Normally, not always, but normally, it covers both purpose and knowledge, so that if you tried to murder the queen by blowing up the carriage, famous example, and that would lead to the death of the footman, even though you love the footman, you are still guilty of killing the footman through murder. Okay? That's the famous example. Yes, Your Honor. So intent includes, unless there's some contrary which you could argue, to the both. The statute, the construction, they have to show that scheme to defraud means that the person intends, which means he has knowledge that, as I take it, to deceive, cheat, or deprive. That's where the or is. Deceive, cheat, or deprive a financial institution of something of value. So I looked at that, and I thought, what's the problem? What's the problem?  Yes, Your Honor. It's not saying intend to cheat or deceive somebody, and then a separate thing. Or deprive the financial institution of value. It's intend to deceive, cheat, or deprive. Who? A financial institution. Of what? Of something of value. So what is wrong with that instruction? That's what I need explanation for. Yes, Your Honor. And I'll answer that, and then if I may, reserve the remainder of my time. The problem with that instruction is that it allows for a conviction on the basis of a scheme to deceive the bank alone. Now, even if Your Honor disagrees with me, as it seems that you might, that problem is compounded by the intent to defraud instruction, which plainly, it does not include the something of value reference. It plainly allows for a conviction on the basis of an intent to deceive alone. That flies in the face of this Court's fraud precedent, and we see this going from Hammerschmidt, in which the Court equated the idea of wronging a bank in its property rights to pecuniary or property loss. We see it two years later in the Cone decision, where the Court made it clear that an intent to take something from the United States, in that case, the statute designated the United States, that that was insufficient to simply intend to take something from the United States' custody without showing the intent to cause pecuniary and property loss. And we see that all the way through to Pasquantino, the 2005 decision about economic injury, through to Skilling, where the Court says traditional fraud involves the loss of property. So applying the meaning, really the undisputed meaning of defraud, to the undisputed intent to defraud element here, where Clause 1 specifies the bank, that, Your Honor, is what is wrong with the instructions that allow for a conviction on the basis of a mere intent to deceive the bank. And if I may reserve the remainder of my time. Roberts. Thank you, counsel. Thank you. Mr. Yang. Mr. Chief Justice, and may it please the Court. The intent required in this bank fraud scheme caught case is an intent to deceive the bank for the purpose of depriving it of something of value. Well, all right. I'm sorry to stop you so early on, but I did not understand that to be the argument in your brief. I'm looking at the heading C on page 36, section 13441, requires proof of an intent to deceive a bank, not to cause it monetary loss. So I didn't understand. I'm not sure when Justice Kagan proposed, asked, suggested she was going to ask you the question, I guess I am. I did not think that the intent required I did not think you agreed with the Petitioner because I think the Petitioner is saying very strongly intent to deceive is not enough. And I understand you to say that it is. I'm sorry that the heading was a little incomplete. But I think the rest of our brief, when you take it in context, what's missing from the heading? Well, not just the heading, but the analysis in that part C as well. I mean, the part C just seems to contradict part A or part B or whichever it was.  Kagan to deceive is not enough, that you need something about to deprive the bank of its property. Yes. And I think if you look at, for instance, at page 14 and then at page 17 of footnote 1, at page 31, we say what's required is 13441, this is on page 14, reaches deceptive schemes designed to deprive the bank of property. Then on 17 of footnote 1, we say what's required is 13441, this is on page 14, reaches deceptive schemes designed to deprive the bank of property. Well, when you're designing, when you're – there's only one schemer here, right? And so the scheme is his scheme. And as the scheme has to deprive the bank of property, that's what the jury instructs. Okay. I just want to clear up that it is not enough to deceive a bank, right? No, no, no.  I mean, you need to be able to deceive a bank. Well, not of course, since that's what you said, that it isn't. Well, my apologies. I think, though, that when you take a look at the other parts of our briefs, I'm apologizing that we were trying to distinguish between the intent to harm from the intent to harm and the intent to deceive, and we used some words in there that may have led to some confusion. That's not our position. Well, then, if that's the case, then it all comes down to the instruction, deceive, cheat, or deprive a financial institution of something of value, because you – as I understand your position as clarified, you do have to have the intent to deprive a financial institution of something of value. Right. Okay. Well, then, it's all a question of whether deceive and cheat stand alone, or if they are also modified by, of something of value. I think there's actually a deeper disagreement here. And I'm happy to talk about the jury instructions. And jury instructions, of course, have to be read as a whole. And when you read that, and particularly in conjunction with the materiality requirement, which is discussed in the material matter, you have to deceive the – defraud the bank as to a material matter, and a material matter is one that has a tendency that causes the bank to part with money or property. I think when you read the instructions as a whole, there's really no problem with the instructions. But there's a really – there is a deeper argument here. And that is the argument that Petitioner says that you have to intend to take something that you know is a property interest of the bank. You have to have knowledge of that. And I had thought until today that they were disputing whether a possessory interest was enough. But they've given that up. Kagan. So it seems to me, Mr. Yang, that the real disagreement that you have is that Ms. Bell wants to equate an intent to deprive a bank of a property interest with an intent to have a bank suffer a pecuniary loss in the end. She says those are the same things. You say they're different things. Let's assume you're right. Let's assume that that's – that whether the bank in the end suffers a monetary loss is utterly irrelevant to the form of intent that's required by this statute. All right? So you won that one, let's say. Yang. Go back to the Chief Justice's question about how these instructions reflect that there needs to be an intent to deprive the bank of a possessory interest in property. Yang. I will go to those instructions, and I'm happy to discuss them. But I don't think that's the end of the matter. I do think that there are actually two questions that are – that Petitioner is trying to merge that are distinct, and they're actually making – I thought I was giving you that. No, no. They're making two arguments. One – But could we talk about the instruction? I know that – Yeah, yeah, yeah. That would – I just want to bracket. That is the last part of your argument. We want it first. Do you mind? Okay. Not at all. I'm happy to discuss it. But in terms of the enduring legal consequence of this Court's decision, the bigger ones I'd like to get to. But I will discuss the instructions here. Well, we know there's a big picture in the world, but we want to know about the instruction. But the instructions – The enduring consequence to Mr. Shaw is a little bit different, so. Undoubtedly. But the Court generally doesn't take cases for error correction. And I want to – and the government's interest goes to the broader question of what does Section 1344.1 – Say, Mr. Yang, the instructions. So on the instructions, this is at pages 17 through 19 of the Joint Appendix. And the first instruction that's relevant is the instruction that the defendant has to have knowingly executed a scheme to defraud – that's a defined term – a financial institution as to a material matter. Now, we look – if you turn the page to 18, the scheme to defraud is a scheme in which someone intends to deceive, cheat, or deprive a financial institution of something of value. Here, there's only one schemer. So the schemer, the one that created the scheme, had to intend to deceive, cheat, or deprive a financial institution of something of value. Now, remember, the first instruction that we discussed talks about it has to be a scheme to defraud as to a material matter. If you go further down on page 18, a material matter is one that has a necessary tendency to influence or is capable of influencing the financial institution to part with money or property. This is what a scheme to defraud is. Now, I don't think, when you take that in context, and you have to read instructions holistically, that there's really any question. Sotomayor, don't forget Instruction 21. You're cherry-picking. Well — An intent to defraud is an intent to deceive or cheat. Right. And then we'll have to go back to Instruction 17 to see how that fits in. The second part is you also have to independently find that you did so, that is, execute  a scheme to defraud the financial institution. So their intent to defraud simply says you have to intend or deceive or cheat, again, the financial institution. That's somewhat superfluous in a single-person fraud scheme like this, because you've already defined the scheme to embed those requirements. Well, but you've kind of — Instruction, you do read it in context. But if I read Instruction 18, in the context of 21, it kind of highlights that you have deceive or cheat separate from the deprivation of something of value. So linguistically, you have to say that what they meant in the instructions was somebody who intends to deceive a financial institution of something of value. And that's just not grammatical. It's not great, but it is not — but it's not unacceptable here, because when — It's okay once you put in the word material. I think material —  I think that's what — It says you have to execute a scheme or defraud a financial — to defraud a financial institution as to a material fact. So it's assumed deceive was separate. But the material — If deceive was separate, you would have to deceive the financial institution as to a material fact, which is defined in Instruction 19 as one that has a natural tendency to influence a financial institution to part with money or property. That's — That's the one you gave back in Instruction 19. So it's a draw. And so in 18 says deceive, cheat, or deprive a financial institution of something of value. Something of value goes right along with deprive, but it doesn't go along with deceive. I don't think that's correct. I understand Your Honor's challenge here. It's that the — you would say, like, out of something of value normally if you were saying it by itself. But when you have a series of verbs, it's not uncommon in — in common parlance simply to use the appropriate, you know, function word here, of, with the — that connects to the last word. So when you say deceive, cheat, or deprive a financial institution of something of value, the normal juror is going to understand that that means you're deceiving the financial institution, cheating the financial institution, or — But the one which talks about — has nothing to do with — it just says intend to deceive or cheat. Nothing of something of value. And when you quote, you know, the instruction on page 46 to make it read, to make it make sense, you have to add in, as you do, after deceive, deceive the bank out of something of value. Because it makes no sense to say deceive of something of value. It doesn't even parse under Petitioner's reading, because I think Petitioner at least thinks that you have to deceive, cheat, or deprive the financial — like, deceive the financial institution. Kagan, it doesn't parse neatly under either reading, but I have to say that if I'm a reader, the way I understand this is you have to — you have to show the scheme has to be one to deceive a bank, to cheat a bank, or to deprive a bank of something of value. And in that case, the deceive a bank is operating as a disjunctive clause without the of something of value. No, I think it actually — you could read — It's to deceive a bank, a loan, cheat a bank, a loan, or deprive a bank of something of value. And so I'm a juror. I say, well, it's enough if the bank was deceived. I don't see how you can read — you might say just deceive in the abstract. No, it's got to be that you're deceiving somebody. Well, but if you're deceiving the bank, if a financial institution, which follows, connects to deceive, then so does of something of value. Well, I don't think so, because that would make no sense. It would be the scheme must be one to deceive a bank of something of value. Whoever would use words like that? I understand that it's a slightly — there is a slight grammatical issue with this language. Well, I think it's more than grammatical. It's just like it doesn't make sense. I think when you read it in context, right, you have to take this. This is the definition of scheme to defraud. When you read this in context with what you are — the jury is required to do, knowingly executed a scheme to defraud a financial institution as to a material matter, right? So that scheme has to be with regard to a material matter. That material matter has to lead the bank, has a tendency to lead the bank to part with money or property. So when you take that in context, what does that mean? What's the material matter mean? The only way you can make sense is if you're actually depriving the bank of money or property. That is something of value. Now, if the Court has concerns about how this parses, the Court could decide the legal question, which is the important issue here, and simply — Sotomayor, why has the government forgotten, when it's at trial, that simplifying things for juries is always the best thing? Do you really think that any juror reading this would parse it with the care that you are? Why can't you just say something like, a scheme to defraud a bank is a scheme to what was previously called a scheme to defraud, just the three words, to deceive or cheat the money and to cheat the bank of some interest in money or property? I completely agree that simplicity is the — is preferable. I don't think there's a problem with what we have here. But I will even want to up you on the simplicity. I think the proper instruction is a scheme to defraud is one intended to deceive the bank for the purpose of depriving it of something of value. Just — just get rid of the disjunctives, right? That would be the better instruction for a single-member bank fraud scheme. Now, things get a little complicated when you have schemes with multiple members. We don't have to discuss it. It's discussed in footnote 10 of our brief. But for the purpose of this case, that would be simple. We think that the instructions, they're not perfect, but they're — they convey and the jury would have found the requisite requirements of bank fraud. If the Court has any doubts — Is there something in our cases that say that the instructions have to be read in the context of what the jury heard or something like that? I think the Court — I mean, we could say close enough for government work, but I don't know. Well, I don't think we've quite said that, but I — it's in pages 40 — it's probably 44 or 45 of our brief, which is the general proposition that you just have to — that jury instructions must be viewed in the context of the overall charge. And when you look at this in light of the materiality charge, any kind of ambiguity that might have been interjected in the definition of scheme-dealer fraud, I think, is sufficiently displaced. There's no doubt. It's not just the instruction. It's what the court of appeals held. The court of appeals held, in short, as a quote, the defendant was guilty of bank fraud because he intended to deceive the bank, full stop. So it's not just a problem with the instructions. It's a problem with what the court of appeals held. Again, I think this may be a problem with some brevity. I don't think the court of appeals meant to say, if you walk in to the bank and tell the bank, you know, the Nationals lost their game and don't have home-field advantage, that that's bank fraud. Of course the court of appeals knows that it's in order to obtain something from the bank. That's what bank fraud is. And I don't think that, you know, just as the heading for our brief in Section C might not have been fully complete, the same thing for the court of appeals But I'd like to get back to I think what's a broader issue here, which is what is the intent required. And Petitioner's see you as a lawyer. Ginsburg. Could you just tell us why didn't the government charge under 2, which your colleague has agreed fits this case, that if he'd been charged under 2 and convicted, that would be fine? Because under 2, you need to actually prove a misrepresentation. Because under 2, you have to prove a false statement or a false misrepresentation. Now, in the context of crimes that occur over the Internet, there are some complications that are involved with that. The charging decision was to take one. Clause 1, remember, is scheme to defraud. This is the mother ship of language from the fraud statutes. It comes from the mail fraud and the wire fraud. Congress knew that this was broad, and Congress intended to adopt it specifically because it was broad. And in fact, Congress considered drafting language that would have required scheme to harm, cause economic loss to a financial institution, and specifically rejected it after the Department of Justice said, hey, that's too narrow. Scheme to defraud is broader, and this would unduly narrow the statute. So the government chose Clause 1 because it was the broader clause, and we didn't need Clause 2, which could have complicated proof a little bit. Now, on the two questions that Petitioner's presenting, two kind of legal questions are, does the defendant have to have some knowledge of the legal property status of the thing that's being taken? I think the answer is clearly no. Willie Sutton, in the 20th century, to move off from Jesse James, he robbed a bank because that's where the money is. Now, if Willie Sutton believed that all the money he took was customer deposit accounts, didn't belong to the bank, it didn't ever intend to harm the bank, he'd still be you'd still call it bank robbery. And if he did the same thing through deceit, you'd call it bank fraud. Now, there's no reason to add this additional intent knowledge about the property status of the thing that's being taken. It doesn't advance any interest that the Congress is trying to advance, which is to put subjectively in the defendant's mind about what they think. Is it owned by? Is it an ownership? Is it a possessory interest? Is there insurance? Is there not insurance? It depends on the nature of the actual scheme and what's being taken. Congress would not have wanted to distinguish between defendants who execute the same scheme based on the idea that once the defendant is sophisticated the right words for the So you're saying that there was an intent that there be property. How do you want to say it? An intent to injure the bank in its property. How do you say it? Look, some people, bank robbers, go into banks. They take the customers. They line the customers up against the wall, and they take out their bill folds. Is that defrauding the bank or bank robbery? No, no, because you're obtaining it from the customer. Yeah, yeah. So how do you want to do this one? So in bank fraud, the intent required, and remember, there's more than just intent. As a fact, we do have to prove that there was a property interest in the bank. So, for instance, in your example — There was, but it was a property interest in the bank. What you have to prove in respect to that property interest is in the defendant's mind. So the only intent required is the intent to deceive the financial institution in order to obtain something of value. Now, that something of value — So that it could be of value and belong only to the customer. That — that complicates things, I think, in a good way. Yeah, that's why I want to know why, and I'm going to need to know the words. There's no more required for intent. Now, in order to establish — I thought that you — it was, that it's an intent to deprive the bank of a property, including a possessory interest. No. And the reason — it's something of value that, in fact, is a possessory interest. Whether or not — or a property interest. Whether or not the defendant knows it's a property interest. Yes, but the bank — the bank has to have a possessory interest in — a property interest in this thing. Right. And property interest is broad. But the defendant doesn't have to know about that property interest. It just has to know, I'm trying to get money. That — I want the money, and that's enough. Now, the money happens to, in fact, be a property interest of the bank, but the defendant doesn't have to know that. We don't require our defendants to have taken property law or banking law or studied the risk-of-loss rules that apply when frauds occur to banks. None of these things have to be in the knowledge or of — or beliefs. What does he have to know about it? Does he have to know that the bank is involved? I mean, what does he have to know about the bank? He has to know that he's — That a bank is likely involved? I mean, this is pretty easy because he sent the check, but — Well, no. I think what's required is — and let me take a step back. When we're talking — we're talking about financial institutions. And it might help to refer to page 1A of the government's appendix. Financial institutions are not just banks. Financial institutions include certain banks when they're FDIC-insured, certain credit unions, and then a whole slew of ten — a list of ten other things. It includes a small business investment company. Okay. But here we have a bank. What did this defendant have to know about this bank, if anything? It didn't have to know its status as a bank under the statute. It just had to know it's taking something from this entity, which, in fact, again, is a bank under the statute. It could be a holding company. It could be any of these things. It's taking something from this entity by deceit, and that's the intent. Like, something of value from this entity by deceit. It doesn't have to know, does this entity, is it a small business investment company defined under Section 103 of the Small Business Investment Act? It doesn't have to know these things. And the reason is, once you get into the realm of fraudulently taking something from an entity, it — that's criminal conduct. And the additional requirements, like that it was a bank, that's a jurisdictional hook. It's similar to — It has to know that a financial institution is involved. It doesn't have — That's — I mean, that's — It has to know — it doesn't have to have any knowledge about whether the entity that it's depriving a property qualifies as a financial institution. It could be, for instance, a — a small kiosk in a grocery store that's conducting transactions and happens actually to be a bank outpost. But you don't know it's a bank, but you rob a bank or you defraud the bank. It's still — you don't have to have knowledge of its status as a financial institution. There are several examples, bank robbery or larceny under Section 2113a and b. The courts have held you don't need to know that the entity robbed is a bank. That's Trevino in the Fifth Circuit, Schar in the Seventh Circuit. Theft of U.S. property. If you steal U.S. property, you don't have to know it's owned by the U.S. There's a recent case called Rehack in the Eighth Circuit that surveys the unanimous views. You don't have to have knowledge of the status as property of the United States. Ginsburg. Can you clarify for us what is in the overlap area, what is covered only by one, and what is covered only by two? They are, of course, cover almost — they're almost coterminous. But there are things that are outside of one, and there are things that are outside of two. What's outside of one are schemes that — schemes where you do not — where you're — fraud is not targeted at the bank, or — yes. So two — let me start over. It's a little confusing. Two is broader than one in the following respect. It covers schemes — Two covers what? Two — clause two is broader than one because it covers schemes to deceive the custodian of bank property. One does not because the deception has to be directed at the bank. But one covers things that two does not because two is limited only to false statements. This is what Lofgren explained in a footnote. One covers frauds that are based on nonstatement-type deception. For instance, check-kiting. Checks are not statements about the balance in the account. Check-kiting is covered. Other behavioral type of frauds, if, for instance, it's a little far-fetched, but you could have someone that, you know, dresses in a disguise and just walks into the bank, the bank lets them into the well-known customer, walks into the safety deposit box, takes out the money, no statements made, one would cover that kind of thing. Now, these areas are, you know, on the fringe and the two terms or the two provisions largely overlap. And that's not surprising because the language that was the impetus for two was language that the Court adopted in Durland in construing the term scheme to defraud. So there's a lot of overlap between these two things, and that's what Justice Kagan recognized in Lofgren. But they both have independent meaning. Not a lot. And some, you know, they often can be used at the same time, but they are independent. Kagan. KAGAN. Mr. Young, you referred to a money in a security deposit. Your answer would be the same, right? Young. If the ---- Young. If somebody went in and said I'd like to see the security deposit boxes and made a false statement to the bank about his entitlements to see the security deposit boxes and took the money out. Young. Doesn't the bank still have possessory interest in that, even though it doesn't use that money in the same way, correct? Correct. Let me give you another example. Suppose that I'm sitting in a coffee shop and somebody comes up to me and says, I have to make a phone call. Would you just hang on to my computer for a minute, and then disappears. And then somebody else comes up, the fraudster comes up, and says, oh, she just told me to pick up her computer from her, and that's a misrepresentation. But I give him the computer. Do I have ---- have I had a possessory interest in that computer just because somebody said, why don't you take a look, you know, keep your eye on this? Gratuitous Bailey is what they would be. And I think the answer is, I think we would say yes for purposes of the fraud statute. Now, this wouldn't, of course, be bank fraud. And ---- Yeah, yeah, yeah. But I mean, that ---- But ---- But what you're essentially saying is that anything I can think of, any hypothetical I can think of, which involves my hanging on to something for somebody else, that I have a possessory interest in that, sufficient to satisfy this scheme. And I don't ---- it's sufficient for this purpose. And I don't think this is unusual. Oftentimes, rights and interests in the law are relative to other people. So your possessory interest would not be superior to the person who owned the laptop, but it would be superior as to third parties having no claim of right, no valid claim of right to the laptop. So, yes, that I think could fall within the general understanding of a scheme to defraud. Obviously, not a scheme to defraud a financial ---- I mean, that suggests to me that as long as the person knows that the money is being ---- is in the bank somehow, it just shouldn't matter, because anything counts as a possessory interest, right? It shouldn't matter at all. And I think that emphasizes why Congress would not have wanted to add some additional knowledge requirement about the property status of the money. Like, why does it matter? All it does is complicate things. Congress would not have wanted to carve out this type of, you know, conduct as non-criminal. And, in fact, it's important to recognize, even Petitioner says she's not ---- he's not carving out anything that's non-criminal. In page 25 of the reply brief, Petitioner just says it's essentially a pleading game. Why would Congress have wanted to make the broad language of schemes to defraud, which has a history going back more than a century, to be a narrow appendage on something else, in order to force the government into a pleading game when no ---- at the end of the day, if it's pled properly, it's still an offense punished by the same time? It just doesn't make any sense. This is not what Congress intended. It has no basis in the text or history of the bank fraud. When you look at what Congress did in the legislative history, it rejected language that would have adopted the same thing. As far as I can tell, everything points against Petitioner here. If the Court has no further questions, we'd ask that you affirm. Roberts. Thank you, counsel. Ms. Bell, you have three minutes remaining. Bell. Thank you, Mr. Chief Justice. To get back to Justice Breyer's question about where in the record did ---- was this disputed, that is at pages 646 to 647. And there, counsel, myself, specifically made the argument that the problem with this disjunct ---- this instruction, exactly as Justice Sotomayor and I believe Justice Kagan pointed out, is the disjunctive wording of intent, the intent to defraud instruction. Sotomayor, assume I agree with you that there were parts of your argument, both below and here in your brief, that suggested the instructional error. But what I find is that the way you presented the argument was confusing. Yes. You took a lot of teasing out. Does ---- how does that affect what we do? Yes, Your Honor. That you weren't clear in the instruction. Don't you forfeit that argument? No, Your Honor. The claim is that the intent to ---- we challenge the intent to fraud. I know what your two claims are. Okay. The question is if I disagree with your basic premise that you need to prove pecuniary loss to the bank. I know you want to win that, but please accept my hypothetical. I disagree with you that the only issue is that you have to cheat and deprive the bank of a possessory of something in a possessory ---- in their possessory interest, okay? Simple as that. It doesn't have to cause ---- you don't have to intend to cause pecuniary loss. All right? Where does that leave your instructional error? It's still an error, Your Honor, because it permitted conviction on the basis of the mere intent to deceive the bank. And there's no curing it looking to, for example, the materiality component of the instruction. How about if I find that what you ---- that you didn't articulate your argument clearly enough to the court below or to us? Where does that put you? Have you forfeited? Have you waived? Have you done something? No, Your Honor. The challenge was always to the disjunctively worded jury instruction. And that was consistently made from the district court to the court of appeals and to this court. The only question has been how to formulate if more than intent to deceive is required, then what more? How do we explain that second component? Hammerschmidt itself, which is the undisputed, applicable definition here, uses a number of different formulations, and that's part of where the confusion comes from. Hammerschmidt says the intent to defraud is the intent to deceive, and it also uses the ---- and to wrong a bank in its property rights. It equates to wrong a bank in its property rights with, to deprive a ---- I'm sorry, a victim. It equates to wrong a victim in its property rights with depriving a victim of something of value. And it also equates that with cheating a victim out of something of property. And also, to make matters even more confusing in terms of the number of formulations, it says that the mail fraud statute is limited to the infliction of pecuniary or property loss. And so our formulations come out of the Hammerschmidt case. And what we have always asked the Court to do here is to construe intent to defraud to require not just the intent to deceive as the lower court instructions required, but also the intent to do that second thing, which is ---- Robertson, Thank you, counsel. The case is submitted.